


AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone<br>Seized as FP&F No. 2025565300003201<br>("Target Device") | )<br>)<br>)   Case No. **24-mj-04177**<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent James T. Burns, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Darnell G. Bembo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: __11/01/2024__

*Judge's signature*

City and state: San Diego, California      HON. BARBARA L. MAJOR, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black iPhone
Seized as FP&F No. 2025565300003201
("Target Device")

    Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

. The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **October 16, 2024 through October 30, 2024**:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email and IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Darnell G. Bembo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Black iPhone
> Seized as FP&F No. 2025565300003201
> (**"Target Device"**)

the **Target Device**, as further described in Attachment A and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Daminique Austin MOSES to transport and move illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2007 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal

1

Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for 17 years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

3

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

4

## FACTS SUPPORTING PROBABLE CAUSE

11. On October 30, 2024, Border Patrol Agent W. Swedberg (BPA Swedberg) was conducting his assigned duties in the State Route 94 (SR-94) Border Patrol Checkpoint located in Jamul, California (CA). BPA Swedberg was wearing his full rough duty uniform with visible badge and insignia.

12. At approximately 2:30 PM, BPA Swedberg heard a radio transmission via service radio that a vehicle (black, Chrysler 300) was seen parked in a parking lot in Tecate, California. There has been a trend of human smugglers using these parking lots as their staging area before they pick up individuals who have crossed into the United States illegally. It was also relayed that the driver was sitting in the car staring at his phone. This is out of the ordinary because most people who use these lots park their vehicles and immediately proceed to walk south into Mexico. This individual appeared to be waiting for something or someone. It was then relayed that the vehicle was seen driving east on Humphries Rd and soon after it was seen again driving west toward the SR-94 checkpoint. The vehicle was suspected of having picked up illegal aliens. The SR-94 checkpoint was brought to full operational status, and BPA Swedberg took up a position in the primary inspection area.

13. At approximately 2:26 PM, BPA Swedberg saw a black Chrysler 300 approach the primary inspection area. There was one male driver, later identified as the defendant, MOSES, Daminique Austin ("MOSES"). There was also one male passenger and one female passenger, each in the back seat. They were later identified as the material witnesses, MATEO-Lopez, Jeuel ("MATEO"), and RAMON-Mauro, Amalia ("RAMON"). BPA Swedberg identified himself as a United States Border Patrol Agent. In English, BPA Swedberg asked MOSES what his citizenship was. Answering in English, MOSES said that he was a United States Citizen. In Spanish, BPA Swedberg then asked MATEO what his citizenship was. MATEO stated that he is a citizen of Mexico without

5

any immigration documents that would allow him to enter or remain in the United States legally. At that point, Border Patrol Agent D. Hinojosa was on the other side of the vehicle conducting an immigration inspection on RAMON in the Spanish language. RAMON stated that she was also a citizen of Mexico without any immigration documents that would allow her to enter or remain in the United States legally.

14. At approximately 2:46 p.m., BPA Swedberg placed MATEO and RAMON under arrest.

15. At approximately 2:47 p.m., BPA Swedberg placed MOSES under arrest. This area is located approximately 7 miles north of the United States/Mexico International Boundary and approximately 10 miles west of the Tecate, California Port of Entry.

16. At the time of arrest, a white iPhone **(Target Device)** was found charging in the center console of the vehicle. MOSES claimed that the **Target Device** was his.

17. As BPA Swedberg was searching the Black Chrysler 300 after the arrests, he found a black semi-automatic pistol, also in the vehicle's center console. The pistol was loaded with nine rounds in the magazine and one round in the chamber. BPA Swedberg seized the firearm, magazine, and ammunition.

18. MOSES was read his *Miranda* rights and stated he was willing to answer questions without the presence of an attorney. MOSES stated that he was contacted by an unknown individual on a WhatsApp message instructing him to drive to San Diego and, subsequently, Tecate, California. MOSES stated that he received a pin drop to where he picked up the two illegal aliens. MOSES stated he was then going to drive to El Cajon, California, but was unsure if that was the destination. MOSES stated he and the smuggling coordinator never spoke about how much he was going to get paid, but that he has heard of individuals receiving $900 to $1,000 dollars per illegal alien successfully transported.

19. MOSES was questioned about the firearm that was located in his vehicle. MOSES stated the firearm is legally registered to him and was loaded with one round in the chamber. MOSES stated the firearm was in the unsecured center console of the vehicle.

MOSES added he does not possess a carry-concealed weapons license. MOSES was also asked if the marijuana discovered in his vehicle belonged to him, to which he replied yes.

20. Material witnesses MATEO and RAMON stated that they are citizens of Mexico without any immigration documents that would allow them to enter or remain in the United States legally. MATEO stated that smuggling arrangements were made prior to crossing into the United States. MATEO stated he was to pay approximately $13,000 USD if successfully smuggled into the United States. RAMON did not state how much she was going to pay.

21. MATEO stated that he and his wife (RAMON-Mauro) crossed at approximately 1:00 PM. He stated that a black, four-door sedan picked them up soon after crossing the International Boundary fence. MATEO stated that they both sat in the back seats of the car. MATEO stated that they were in the car for approximately thirty minutes before they arrived at the checkpoint where they were arrested. MATEO stated that they were arrested after a Border Patrol Agent questioned them about their immigration status.

22. MATEO was shown a photographic lineup and positively identified the defendant MOSES, Daminique Austin as the driver for this event.

23. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer

7

than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on **October 16, 2024 through October 30, 2024.**

## METHODOLOGY

24. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will

8

employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

26. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

27. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

28. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

29. Because the **Target Device** was seized at the time of MOSES's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **October 16, 2024 through October 30, 2024.**

//
//
//
//
//
//
//

9

30. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the item listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Darnell G. Bembo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 1st day of November 2024.

_____
HON. BARBARA L. MAJOR
United States Magistrate Judge